# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4 and JOHN DOE 1, each c/o ORRICK, HERRINGTON & SUTCLIFFE LLP, 2100 Pennsylvania Avenue NW, Washington, DC 20037,[1]<br><br>*Plaintiffs*,<br><br>– *versus* –<br><br>UR JADDOU, in her official capacity as Director of United States Citizenship and Immigration Services, 5900 Capital Gateway Drive, Camp Springs, Maryland 20746, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, 5900 Capital Gateway Drive, Camp Springs, Maryland 20746, ANTONY BLINKEN, in his official capacity as United States Secretary of State, 2201 C Street, NW Washington, D.C. 20520, UNITED STATES DEPARTMENT OF STATE, 2201 C Street, NW Washington, D.C. 20520,<br><br>*Defendants*. | **Civil Action No.**<br><br>**Judge:**<br><br>**Magistrate Judge:**<br><br>**COMPLAINT FOR WRIT OF MANDAMUS & RELIEF FROM A VIOLATION OF ADMINISTRATIVE PROCEDURE ACT** |

## PRELIMINARY STATEMENT

1. Plaintiffs Jane Does 1-4 and John Doe 1 (collectively "Plaintiffs") have all experienced and are continuing to experience extensive injuries as a result of Defendants' unexplained delays in processing Plaintiffs' applications to be resettled as refugees to the United States. Those unexplained delays are unreasonable as a matter of law in violation of the Administrative Procedure Act, 5 U.S.C. § 551, et seq.

2. Plaintiffs have each fled war, terrorist attacks, and discrimination in their home countries and fled to Kenya out of fear for their safety. Once in Kenya, each Plaintiff was

---

[1] Plaintiffs respectfully request that the Court waive the requirement under Local Rule 102.2(a) to provide their name and addresses, as explained in the concurrently filed Motion for Leave to Proceed Under Pseudonym and for Waiver of Fed. R. Civ. P. 10(a) and Local Rule 102.2(a). Plaintiffs shall serve the confidential version of the Complaint and related Motion on all Defendants.

determined to be a refugee by the United Nations Office of the High Commissioner for Refugees ("UNHCR"). Plaintiffs were referred for resettlement to the United States due to their particular vulnerability and received conditional approvals as far back as August 24, 2015. Despite delays extending for more than eight (8) years, Plaintiffs have yet to receive a final adjudication of their applications.

3. While awaiting resolution of their applications to be resettled to the United States, Plaintiffs have been subject to inhumane conditions, including discrimination and attacks on their person and property. And every day they continue to wait, Plaintiffs are placed at increasingly greater risk of further injury. For example, early in June 2024, while awaiting Defendants' final decision on her application, one Plaintiff was viciously attacked and beaten in the street while her property was stolen and burned.

4. Defendants' unexplained delays have thus left Plaintiffs stranded in Kenya facing physical and verbal attacks, severe poverty, food insecurity, and lack of adequate employment because they cannot work legally.

5. Because Defendants have unlawfully withheld and unreasonably delayed final decisions on Plaintiffs' refugee applications, this Court should compel Defendants to process each Plaintiff's respective refugee applications forthwith and without further delay.

**THE PARTIES**

6. Jane Doe 1 is a refugee residing in Nairobi, Kenya originally from Somalia. Plaintiff has applied for refugee resettlement in the United States, received a Notice of Deferral from Defendant United States Citizenship and Immigration Services ("USCIS") on November 4, 2016, and has not received a final adjudication of her refugee application.

7. Plaintiff Jane Doe 2 is a refugee residing in Nairobi, Kenya, originally from the Democratic Republic of the Congo. Plaintiff has applied for refugee resettlement in the United States, received a Notice of Eligibility for Resettlement from USCIS regarding her refugee application being conditionally approved on August 24, 2015, and has not received a final adjudication of her refugee application.

8. Plaintiff Jane Doe 3 is a refugee residing in Nairobi, Kenya originally from the Democratic Republic of the Congo. Plaintiff has applied for refugee resettlement in the United States, received a Notice of Eligibility for Resettlement from USCIS regarding her refugee application being conditionally approved on February 26, 2016, and has not received a final adjudication of her refugee application.

9. Plaintiff Jane Doe 4 is a refugee residing in Nairobi, Kenya originally from Somalia. Plaintiff has applied for refugee resettlement in the United States, received a Notice of Eligibility for Resettlement from USCIS regarding her refugee application being conditionally approved on January 27, 2017, and has not received a final adjudication of her refugee application.

10. Plaintiff John Doe 1 is a refugee residing in Nairobi, Kenya originally from Ethiopia. Plaintiff has applied for refugee resettlement in the United States, received a Notice of Eligibility for Resettlement from USCIS regarding his refugee application being conditionally approved on August 7, 2015, and has not received a final adjudication of his refugee application.

11. Defendant Ur Jaddou is sued in her official capacity as Director of USCIS, which is a component of the United States Department of Homeland Security. Defendant USCIS is responsible for the review and adjudication of refugee applications as part of the United States Refugee Admissions Program, *see* 6 U.S.C. § 271(b)(3), which provides resettlement opportunities

to persons overseas who are of special humanitarian concern, while protecting national security and combating fraud.

12. Defendant Antony Blinken is sued in his official capacity as Secretary of State for the Department of State. Defendant The Department of State oversees managing the United States Refugee Admissions Program ("USRAP") and supervising and contracting with Resettlement Support Centers and the International Organization for Migration and other entities that facilitate the processing of refugee applications.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C § 1361 (Mandamus Act). This Court has additional remedial authority under 28 U.S.C. § § 2201-02 (Declaratory Judgment Act).

14. Venue is proper in this District is proper under 28 U.S.C. § 1391(e)(1) due to Defendant USCIS being headquartered, and Defendant Jaddou having her principal place of business, in the District of Maryland, where a substantial part of the conduct giving rise to Plaintiffs' claims is alleged to have occurred.  No real property is involved in this action.

## FACTUAL BACKGROUND
### The United States Refugee Admissions Program

15. The Refugee Act of 1980 ("the Act") established uniform procedure for assistance in prompt adjudication of refugees entering the United States.

16. The Act declared it to be "the historic policy of the United States to respond to the urgent needs of persons subject to persecution in their homelands[.]"

17. The Act provides that the Department of Homeland Security can admit "any refugee who is not firmly resettled in any foreign country, is determined to be of special

humanitarian concern to the United States, and is admissible . . . as an immigrant[.]" 8 U.S.C. § 1157(c)(1).

18. USCIS and the State Department jointly administer the USRAP, through which a select group of the world's refugees are considered for resettlement to the United States.

19. USCIS is responsible for adjudicating refugee applications.

20. The Department of State manages the USRAP and facilitates its overseas operations, including by contracting with and supervising the Resettlement Support Centers and the International Organization for Migration.

21. Resettlement Support Centers ("RSC"), in this case "RSC Africa," are responsible for guiding United States-bound refugees through the United States's resettlement process. RSCs serve to pre-screen refugees once they have been referred by UNHCR to ensure they fall within United States-designated nationalities and processing priorities.

22. The International Organization for Migration ("IOM") is an intergovernmental organization supporting humane and orderly migration. As a contractor of the State Department, IOM prepares cases for security screening, interview, and adjudication, as well as provides required medical screenings and manages the transit of refugees to the United States.

23. To be considered for resettlement through the USRAP, refugees must be referred to the program by an entity such as UNHCR, on the basis that they are particularly vulnerable.

24. Refugees referred to the USRAP are prescreened by an RSC in their region.

25. A refugee must next appear for an in-person interview with a USCIS officer, who obtains information about the refugee's eligibility for resettlement and completes a Form I-590.

26. Following the interview, the refugee may receive a Notice of Eligibility advising them that they have been deemed eligible for resettlement.

27. USCIS conducts additional processing of applications it deems eligible for resettlement, including background and security screenings.

28. In addition to clearing required security screenings, refugee applicants must complete additional processing steps, including passing a medical screening and attending a cultural orientation to prepare for life in the United States.

29. Required clearances may expire while an applicant waits to be approved for resettlement. Medical exams, for example, expire after six months.

30. Once the applicant has completed the required processing steps and USCIS has approved their application, the Department of State designates them as "ready for departure" and coordinates with the RSC and IOM to arrange their travel to the United States.

31. If USCIS decides instead to deny a refugee application, it issues the applicant a Notice of Ineligibility, which then may be subject to appeal, or Request for Review.

**Delays in Adjudicating Plaintiffs' Refugee Applications**

**Plaintiff Jane Doe 1**

32. Plaintiff Jane Doe 1 fled Somalia with her children after she witnessed her mother and siblings killed by a terrorist group in front of her eyes. Somalia is the site of significant conflict between the government, militias, and a terrorist group called Al-Shabaab. Al-Shabaab commits severe human rights abuses, including terrorist attacks on civilians and targeted killings, including summary executions on civilians.

33. After arriving in Kenya, Jane Doe 1 was registered as a refugee by UNHCR and referred for resettlement to the United States.

34. Jane Doe 1 is the principal applicant on her refugee application, and her children are derivative applicants on her case.

35. Jane Doe 1 was interviewed by USCIS and notified on November 4, 2016 that her application for refugee status in the United Status was deferred for further review.

36. In 2018, the RSC Africa online status checker, an online system that helps refugees determine the status of their applications, displayed that the USCIS decision was "complete," but Jane Doe 1 never received documentation from USCIS to that effect.

37. In 2021, the RSC Africa online status checker displayed that the USCIS decision was "in process."

38. In 2022, Jane Doe 1's two youngest sons went to RSC Africa to get fingerprinted so they could be added to Jane Doe 1's application.

39. Throughout 2022 and 2023, Jane Doe 1 sent several emails to USCIS and received emails stating the case is on a "long-term USCIS hold" without offering any explanation why.

   a. Nov. 14, 2022: Case is on "long term hold pending USCIS review."

   b. June 7, 2023: Case is on "long term hold pending USCIS review."

   c. July 21, 2023: Case is on "long term hold pending USCIS review."

   d. August 29, 2023: Case is on "long term hold pending USCIS review."

   e. October 30, 2023: Case is on "long term hold pending USCIS review."

40. Jane Doe 1 continues to wait for adjudication of her refugee application, more than eight years after her interview with USCIS and receiving a notice that her application was subject to further review of her eligibility.

41. Defendants' failure to decide Jane Doe 1's refugee application for herself, her daughter, and three sons has led to life in abject poverty and other significant negative outcomes for Jane Doe 1 and her family.

42. Since arriving in Nairobi, Kenya, Jane Doe 1 has experienced periods of homelessness, extreme hunger, and beatings from the police.

43. Currently, Jane Doe 1 is living in a small one-bedroom house with four of her children.

44. It is extremely challenging to provide for the family because Jane Doe 1 is unable to pursue a job that would support better life due to her status in Nairobi as a refugee.

45. The only work available to Jane Doe 1 is selling secondhand clothes on the street, but this has led to her receiving beatings from police, including with wooden batons, because she does not have work authorization, resulting in injuries to her legs and knees.

46. Due to her lack of employment, Jane Doe 1 has been unable to pay for necessities such as sufficient medical care for her injuries, food, housing, and schooling.

47. As recently as the week of June 3, 2024, assailants confronted her in the street, threw her against a stone, and beat her while they destroyed and stole her goods for sale.

48. Even more recently, on or about June 24, 2024, Jane Doe 1 was caught up in a protest in Kenya, and her possessions, house, and all necessary resources were either destroyed or burnt. This scene was chaotic, and a group of protestors, along with some gangs, robbed Jane Doe 1 for the second time in three weeks. The situation escalated with the police shooting in broad daylight, killing citizens. Jane Doe 1 was forced to flee for her life when she was robbed. Despite a knee injury, her history of thyroid issues, and leg problems, Jane Doe 1 was forced to run. The stress caused Jane Doe 1's blood pressure to spike to 200/92, and she struggled to breathe, causing her immense pain and stress.

49. The uncertainty caused by Defendants' prolonged and unexplained delay in processing Jane Doe 1's refugee application adds to the physical and emotional harm she faces because she is unable to envision a future for her family.

**Plaintiff Jane Doe 2**

50. Plaintiff Jane Doe 2 fled the Democratic Republic of the Congo due to her life being threatened by the Mai-Mai on account of her Banyamulenge ethnicity. The Mai-Mai has a documented history of attacking schools, forcibly recruiting children to be soldiers, abducting people for ransom, abducting people to force them into labor and committing mass mutilations and killings in the Congo all to target individuals, such as Plaintiff who is of a different ethnicity.

51. Jane Doe 2 fled to Kenya where she was registered as a refugee by UNHCR and referred for resettlement to the United States

52. Jane Doe 2 is the principal applicant on her refugee application, and her two sons are derivative applicants on her case.

53. Upon information and belief, Jane Doe 2 was interviewed by USCIS in January 2009.

54. On August 24, 2015, Jane Doe 2 received a Notice of Eligibility for Resettlement from USCIS conditionally approving her application for refugee status in the United States.

55. According to the Notice of Eligibility for Resettlement, a minimum of four months should be expected to complete all procedures before a refugee enters the United States.

56. Pursuant to her Notice of Eligibility for Resettlement, Jane Doe 2 received several vaccinations in November and December of 2015.

57. In early January 2016, she received a three-day medical check-up where doctors informed her that she did not have medical issues. USCIS has not requested Jane Doe 2 to submit to any further medical checks since early January 2016.

58. As indicated above, when a refugee applicant, such as the Plaintiffs, is referred to the USRAP for resettlement consideration, the case is first received and processed by the RSC.

59. RSC Africa is tasked with facilitating resettlement cases in conjunction with the USRAP.

60. In accordance with RSC Africa procedures, Jane Doe 2's oldest son was added to his mother's application upon information and belief in 2019.

61. In accordance with RSC Africa procedures, Jane Doe 2's youngest son was added to his mother's application in February 2024.

62. Adding children to a conditionally approved refugee's application does not restart the clock on adjudicating a refugee application due to the approval of their derivative being a non-discretionary component of the application itself.

63. Jane Doe 2 continues to wait for adjudication of her refugee application, more than eight and a half years after receiving her Notice of Eligibility for Resettlement from USCIS.

64. Defendants' delays in processing Jane Doe 2's refugee application presents difficulties and devastation to her and her two sons.

65. Currently, Jane Doe 2 lives in a small one-bedroom house with her family.

66. Jane Doe 2 has access to water for the bathroom and cooking only one time per week.

67. It is extremely challenging to provide for the family because Jane Doe 2 is unable to secure a consistent job that pays anywhere near a living wage.

68. Because Jane Doe 2 does not have work authorization in Kenya as a refugee, she has access only to low-paying jobs.

69. As a result, Jane Doe 2 experiences difficulties paying for necessities such as food, housing, and schooling.

70. Due to Ms. Jane Doe 2 being unable to afford insurance coverage for medical visits, she has also accumulated unpaid hospital bills and no longer can access necessary medical care.

71. Residents of the Nairobi neighborhood where Jane Doe 2 lives have directed xenophobic vitriol against her.

72. Examples include but are not limited to residents telling her she should go back to her home country because she is being an unproductive member of society and telling her that she is taking away available housing from other citizens in Nairobi.

73. Merchants openly discriminate against Jane Doe 2 due to her refugee status by refusing to deal with fairly with her or to deal with her at all in financial transactions.  The uncertainty of having an application in limbo for such a sustained period of time takes an emotional toll on Jane Doe 2 as she cannot move forward with her life.  The uncertainty also has practical everyday consequences on her and her children because they are stuck in an environment that is harmful without any real hope that a final decision on their future will be issued.

**Plaintiff Jane Doe 3**

74. Plaintiff Jane Doe 3 fled the Democratic Republic of the Congo after the Mai-Mai killed her mother and threatened to kill her on account of her Banyamulenge ethnicity.

75. Jane Doe 3 fled to Kenya where she was registered as a refugee by UNHCR and referred for resettlement to the United States.

76. Jane Doe 3 is the principal applicant on her refugee application, and her husband and four children are derivative applicants on her case.

77. On February 26, 2016, Jane Doe 3 received a Notice of Eligibility for Resettlement from USCIS conditionally approving her application for refugee status in the United States.

78. On April 6, 2016, Jane Doe 3, her husband and her two children completed their medical examinations in a visit to a U.S approved panel physician.

79. According to RSC Africa, the family has cleared all current security procedures.

80. Jane Doe 3's husband and her two oldest children were added to her refugee application, upon information and belief, in or around 2014.

81. Her two youngest children were added to her refugee application in December 2023 because the U.S Embassy in Nairobi prevented the family from adding children until August 2023.

82. Jane Doe 3 was again interviewed by USCIS on December 15, 2023.

83. Despite having an interview several months ago, the agencies involved in processing her application have made no effort to schedule updated medical examinations for the entire family.

84. Since receiving conditional approval of her refugee status on February 26th, 2016, Jane Doe 3 has waited eight years for a final decision from USCIS.

85. Being unable to obtain refugee status for Jane Doe 3, her husband and four children has been extremely difficult and devastating for her.

86. Since arriving in Nairobi, Kenya, Jane Doe 3 lives in abject poverty because of her refugee status.

87. Currently, Jane Doe 3 lives in a small one-bedroom house with her husband and four children.

88. The house lacks access to water for the bathroom or cooking.

89. The house frequently experiences floods due to the structural deficiencies of its floors and walls.

90. Because Jane Doe 3 does not have work authorization in Kenya as a refugee, she has access only to low-paying jobs that do not support her or her family.

91. The only work available to her involves selling clothes to pay for food, housing, medical care, and schooling.

92. Jane Doe 3 experiences abdominal pain due to stress from disturbing living conditions and the daunting uncertainty of her family's refugee status.

93. On top of receiving xenophobic vitriol towards the family, Jane Doe 3 feels increasingly unsafe in her neighborhood due to her husband being assaulted and robbed on account of their refugee status. This feeling of helplessness is aggravated by her refugee application being pending for so long without any end in sight.

**Plaintiff Jane Doe 4**

94. Plaintiff Jane Doe 4 fled Somalia with her children after her parents and siblings were killed when a missile struck their home in Somalia. Somalia has long been host to serious conflict between the government, militias, and a terrorist group called Al-Shabaab.

95. Jane Doe 4 fled to Kenya where she was registered as a refugee by UNHCR and referred for resettlement to the United States.

96. Jane Doe 4 was interviewed by USCIS and a year later, on January 27, 2017, Plaintiff received from USCIS a Notice of Eligibility for Resettlement for her and her four children. Jane Doe 4's children are now twelve, fourteen, sixteen, and nineteen, respectively.

97. Since receiving conditional approval of her refugee status on January 27, 2017, Jane Doe 4 has waited more than seven (7) years for a final decision from USCIS, necessitating this Court's intervention.

98. Plaintiff fled to Kenya, where she hoped to protect her children from the trauma she experienced in Somalia. Instead, she has faced beatings from the police, poor work and living conditions, and a brother-in-law who has threatened to kill her and kidnap her children. She does not leave her home without wearing a mask to hide her identity and her children are unable to attend school for fear of being kidnapped.

99. Plaintiff has little hope left of ever getting a final decision on her refugee application which causes additional emotional strain on top of all of the harm that the extensive delays have caused her.

**Plaintiff John Doe 1**

100. Plaintiff John Doe 1 fled Ethiopia in 1998 with his family on account of persecution he faced in his home country.

101. In February 1999, he entered Kenya as a refugee and settled at the Kakuma Refugee Camp. John Doe 1 was referred for resettlement in the United States.

102. In 2018, he moved to Nairobi to avoid the unrest caused at the camp due to groups of refugees clashing with the camp's host.

103. On August 7, 2015, John Doe 1 received a Notice of Eligibility for Resettlement from USCIS conditionally approving his application for refugee status in the United States. He promptly completed the requisite medical exams, but his case has remained in administrative processing.

104. John Doe 1's parents, who were interviewed for refugee resettlement around the same time, have since been approved and resettled to Minnesota. Their hope of having their son join them has slowly waned in the many years that John Doe 1's application has been pending without any further action.

105. Since receiving conditional approval of his refugee status on August 7, 2015, John Doe 1 has waited almost nine (9) years for a final decision from USCIS.

106. John Doe 1's pending application and its state of limbo crushes his spirit and makes it difficult for him to envision any future of any kind that borders on the normal.

## FIRST CAUSE OF ACTION
### Administrative Procedure Act ("APA")

107. The foregoing allegations are repeated and incorporated as though fully set forth herein.

108. Defendants have a non-discretionary duty to adjudicate Plaintiffs' refugee applications. See 5 U.S.C. § 555(b).

109. Defendants have violated the APA by failing to adjudicate Plaintiffs' refugee application within a reasonable time. See 5 U.S.C. § 555(b).

110. Plaintiffs are entitled to an order compelling Defendants to promptly adjudicate Plaintiffs' refugee applications. See 5 U.S.C. § 706(1).

## SECOND CAUSE OF ACTION
### Mandamus

111.   The foregoing allegations are repeated and incorporated as though fully set forth herein.

112.   Defendants owe Plaintiffs a non-discretionary duty to adjudicate Plaintiffs' refugee applications. See 5 U.S.C. § 555(b).

113.   Plaintiffs has no other means to compel Defendants to perform the nondiscretionary duty that Defendants owe Plaintiffs.

114.   Plaintiffs are entitled to a writ of mandamus under 28 U.S.C. §§ 1361 and 1651 and this Court's inherent equitable authority compelling Defendants to promptly adjudicate Plaintiffs' refugee applications.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

115.   Declare pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendants' delay in the adjudication of Plaintiffs' refugee applications is unreasonable under 5 U.S.C. § 706(1).

116.   Issue an order that requires Defendants to promptly adjudicate Plaintiffs' refugee applications. *See* 5 U.S.C. § 706(1).

117.   Issue a writ of mandamus, pursuant to 28 U.S.C. §§ 1361 and 1651, directing Defendants to promptly adjudicate Plaintiffs' refugee applications.

118.   Retain jurisdiction over this action and any attendant proceedings until Defendants have in fact adjudicated Plaintiffs' refugee applications, and have communicated the results of such adjudication to Plaintiffs and the Court;

119. Award Plaintiffs' reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 2412; and

120. Award such other and further relief that the Court may deem just and proper.

Dated: July 3, 2024

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: (202) 339-8400
Fax: (202) 339-8500
Email: Jburke@orrick.com

   /s/ James Burke
James Burke
(D. MD. Bar No. 18703)
Steven J. Routh (pro hac vice motion forthcoming)
Paige Pavone (pro hac vice motion forthcoming)
Hillary Dang (pro hac vice motion forthcoming)
Hayden Cox (pro hac vice motion forthcoming)
Rene Kathawala (pro hac vice motion forthcoming)

Attorneys for Plaintiffs Jane Does 1-4 and John Doe 1