UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

JANE DOE 1,
JANE DOE 2,
JANE DOE 3,
JANE DOE 4 and
JOHN DOE 1,

    Plaintiffs,

v.

UR JADDOU,
*in her official capacity as Director of United States Citizenship and Immigration Services,*
UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,
ANTONY BLINKEN,
*in his official capacity as United States Secretary of State,* and
UNITED STATES DEPARTMENT OF STATE,

    Defendants.

Civil Action No. TDC-24-1942

**MEMORANDUM OPINION**

Plaintiffs have filed a civil action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b) and 706, and the Mandamus Act, 28 U.S.C. §§ 1361 and 1651, in which they seek to compel the United States Department of State ("the State Department") and United States Citizenship and Immigration Services ("USCIS") to adjudicate their refugee applications. Defendants (collectively, "the Government") have filed a Motion to Dismiss, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

### I. Legal Framework

Section 207 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1157, authorizes the admission of refugees into the United States. A refugee is "a person who is outside any country of such person's nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Specifically, Section 207 provides that:

> Subject to the numerical limitations established pursuant to subsections (a) and (b), the Attorney General may, in the Attorney General's discretion and pursuant to such regulations as the Attorney General may prescribe, admit any refugee who is not firmly resettled in any foreign country, is determined to be of special humanitarian concern to the United States, and is admissible (except as otherwise provided under paragraph (3)) as an immigrant under this chapter.

*Id.* § 1157(c)(1).

The relevant regulations implementing 8 U.S.C. § 1157 are promulgated at 8 C.F.R. Part 207. Pursuant to these regulations, individuals who believe that they meet the definition of a refugee under the INA and meet the requirements for admission set forth in 8 U.S.C. § 1157(c)(1) may apply for admission to the United States as refugees. 8 C.F.R. § 207.1 (2024). An applicant must appear before an immigration officer for an interview to assess eligibility for admission as a refugee and must also submit to a medical examination. *Id.* § 207.2. The regulations also establish waiting lists from which refugees are selected for admission and grants to the Secretary of Homeland Security ("the Secretary") the authority to "adopt appropriate criteria for selecting the refugees and assignment of processing priorities for each designated group based upon such

2

considerations as reuniting families, close association with the United States, compelling humanitarian concerns, and public interest factors." 8 C.F.R. § 207.5.

In accordance with these statutory and regulatory directives, the State Department, in cooperation with the United States Department of Homeland Security ("DHS") and the United States Department of Health and Human Services, implements the United States Refugee Admissions Program ("USRAP") to process refugee applications. U.S. Dep't of State, Report to Congress on Proposed Refugee Admissions for Fiscal Year 2025 ("FY25 Refugee Report") at 13. Generally, individuals seeking to enter the United States as refugees must first be referred to USRAP by the United Nations High Commissioner for Refugees ("UNHCR"), a United States embassy or designated senior U.S. government official, or a designated non-governmental organization. *Id.* at 15–16. Once such an individual is referred to USRAP, USCIS, a component agency of DHS, adjudicates the individual's application by, among other vetting procedures, reviewing the information on the applicant's completed Form I-590, "Registration for Classification as Refugee," and conducting in-person interviews, medical examinations, and background checks. *See* 8 C.F.R. § 207.2; FY25 Refugee Report at 28; USCIS Form I-590, OMB No. 1615-0068. If a USCIS officer determines that an applicant meets all of the eligibility requirements for admission into the United States, and required security checks are successfully completed, USCIS may "exercise[] its discretion to approve the application" and notify the refugee that the application has been "conditionally approved" with a "Notice of Eligibility for Resettlement." I-590 Adjudicator's Manual ("I-590 Manual"), Module 14: Decisions, § b(i) (Apr. 12, 2021), available at https://www.uscis.gov/humanitarian/refugees-and-asylum/refugees/refugee-adjudications-policy-

and-procedures.[1] "[F]inal approval is conditioned upon successful completion of any remaining clearances that are required in the screening process." *Id.* In some instances, an applicant may receive a Notice of Deferral "when additional information is necessary to complete the adjudication," such as outstanding security checks or other documentary evidence. *Id.* § b(iii). Otherwise, a USCIS officer will deny an application if an applicant does not "meet all eligibility requirements for admission" as a refugee. *Id.* § b(ii). Ultimately, "[a]n approved applicant receives refugee status upon admission to the [United States] as a refugee." *Id.* § b(i).

## II.   Plaintiffs' Claims

In this case, Plaintiffs are refugees presently located in Nairobi, Kenya who were referred to USRAP by the UNHCR and have applied for admission to the United States as refugees but are awaiting final adjudication of their refugee applications. Specifically, Plaintiff Jane Doe 1, a refugee from Somalia, received a Notice of Deferral from USCIS on November 4, 2016. Plaintiffs Jane Doe 2 and Jane Doe 3, refugees from the Democratic Republic of the Congo, received Notices of Eligibility for Resettlement stating that their applications were conditionally approved on August 24, 2015 and February 26, 2016, respectively. Likewise, Plaintiff Jane Doe 4, a refugee from Somalia, received a Notice of Eligibility for Resettlement stating that her application was conditionally approved on January 27, 2017. Finally, John Doe 1, a refugee from Ethiopia, received a Notice of Eligibility for Resettlement stating that his application was conditionally approved on January 27, 2017. Plaintiffs continue to await a final adjudication of their applications.

---

[1] The parties rely on this publicly available 2021 version of the I-590 Manual. Although the Government submitted a later version of the I-590 Manual in response to a request from the Court for an unredacted version, ECF No. 42-10, that version appears to include modifications that were not addressed in the briefing, so the Court relies on the 2021 version.

On July 3, 2024, Plaintiffs filed the Complaint in this case in which they request, pursuant to the APA and the Mandamus Act, an order from the Court compelling the State Department and USCIS to adjudicate their refugee applications promptly. In the Complaint, Plaintiffs assert that the Government has a nondiscretionary duty to process and adjudicate the refugee applications, and that they are entitled to the requested relief because the Government has failed to adjudicate Plaintiffs' refugee applications "within a reasonable time." Compl. ¶ 108, ECF No. 1.

## DISCUSSION

In the Motion to Dismiss, the Government asserts that the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs cannot establish a clear, nondiscretionary duty for the Government to adjudicate their refugee applications. The Government further argues that, even if there is such a duty, the Complaint should be dismissed under Rule 12(b)(6) because the doctrine of consular nonreviewability applies. In the alternative, the Government requests that the Court sever Plaintiffs' individual claims under Rule 21.

### I.   Legal Standards

The Motion to Dismiss is filed pursuant to Rule 12(b)(1), based on an alleged lack of subject matter jurisdiction, and under Rule 12(b)(6), for failure to state a claim. As to Rule 12(b)(1), it is the plaintiff's burden to show that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). Rule 12(b)(1) allows a defendant to move for dismissal based on the belief that the plaintiff has failed to make that showing. When a defendant asserts that the plaintiff has failed to allege sufficient facts to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside

the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Kerns*, 585 F.3d at 192. The court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

**II.   APA**

Defendants first seeks dismissal on the grounds that the APA permits a court to compel agency action only when the agency has failed to take a discrete, nondiscretionary action that it is required by law to take. Under the APA, a court may compel "agency action" only when it has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706. Thus, a plaintiff must assert that an agency failed to take a discrete action that it was required to take. *Gonzalez v. Cuccinelli*, 985 F.3d 357, 366 (4th Cir. 2021). Courts may find that an agency is mandated to act only if there is a "clear indication of [a] binding commitment" imposed on the agency through statute or regulation. *Lovo v. Miller*, 107 F.4th 199, 211 (4th Cir. 2024) (quoting *Norton v. S. Utah*

*Wilderness All.*, 542 U.S. 55, 69 (2004)); *see also id.* at 217 ("[F]ederal courts may not order an agency to act when neither statute nor regulation provides a basis for doing so."). A claim to compel an agency to act is limited to "enforcement of a specific, *unequivocal* command, over which an official has no discretion." *Id.* at 211 (quoting *City of New York v. U.S. Dep't of Defense*, 913 F.3d 423, 432 (4th Cir. 2019)). If the action at issue is one that is committed to the discretion of the agency, the Court may not, pursuant to the APA, order the agency to undertake that action. *See* 5 U.S.C. § 701(a)(2).

The Government argues that the adjudication of refugee applications is a matter committed to its discretion pursuant to 8 U.S.C. § 1157(c)(1), which states that "the Attorney General may, in the Attorney General's discretion and pursuant to such regulations as the Attorney General may prescribe, admit any refugee." 8 U.S.C. § 1157(c)(1). According to the Government, there is no statutory or regulatory provision that imposes a clear legal duty to adjudicate all refugee applications. *See id.*; 8 C.F.R. pt. 207.

Plaintiffs argue that, while the ultimate decision of whether to "admit" a refugee is discretionary under the INA, the decision whether to adjudicate an application is not. In *Gonzalez v. Cuccinelli*, 985 F.3d 357 (4th Cir. 2021), however, the United States Court of Appeals for the Fourth Circuit rejected a similar argument in the context of U-Visas, which provide nonimmigrant legal status to victims of certain crimes who cooperate with law enforcement. *Id.* at 361. In *Gonzalez*, the plaintiffs acknowledged that the relevant statute, which states that the Secretary of Homeland Security "may grant work authorization to any alien who has a pending, bona fide application" for a U-Visa, 8 U.S.C. § 1184(p)(6), gives the agency "discretion to grant or deny work-authorization requests" in that it "does not require it to *grant* those authorizations," but that the same language necessarily requires the agency to "*adjudicate* the work-authorization requests."

7

*Gonzalez*, 985 F.3d at 366. The Fourth Circuit disagreed and concluded that this "discretion over whether to grant" a benefit "means that the agency has discretion over whether to implement this provision at all." *Id.* Focusing on the fact that Congress did not include any direct statutory language mandating the adjudication of work authorization requests, and after reviewing other statutory provisions that establish that "Congress has shown that it knows how to require an agency to implement a provision and adjudicate claims," the court held that there was no nondiscretionary requirement for the agency to adjudicate work authorization requests. *See id.* at 367–68.

Here, the INA similarly grants the authority to admit refugees "in the Attorney General's *discretion* and pursuant to such regulations as the Attorney General *may* prescribe." 8 U.S.C. § 1157(c)(1) (emphasis added). Under the reasoning of *Gonzalez*, such discretionary authority to admit refugees "means that the agency has discretion over whether to implement this provision at all." *Gonzalez*, 985 F.3d at 367. Based on *Gonzalez*, and in the absence of more specific language imposing a nondiscretionary requirement to reach a final adjudication on all refuge applications, the Court concludes that § 1157(c)(1) does not establish such a nondiscretionary duty. *See id.* at 367; *see also Lovo*, 107 F.4th at 211 ("[E]xplicit references to an agency's discretion or even to discretionary language, such as the term 'may,' are 'generally construed as permissive rather than mandatory[.]'" (quoting *United Hosp. Ctr., Inc. v. Richardson*, 757 F.2d 1445, 1453 (4th Cir. 1985))).

Plaintiffs otherwise fail to identify a statute or regulation that clearly imposes such a nondiscretionary requirement upon any agency to reach a final adjudication on refugee applications. With regard to statutory text specifically, Plaintiffs point to language in the Refugee Act of 1980, Pub. L. No. 96-212, § 101, 94 Stat. 102 (1980), which broadly declares that "it is the historic policy of the United States to respond to the urgent needs of persons subject to persecution

in their homelands" and states that the objectives of the statute include "to provide a permanent and systematic procedure for the admission to this country of refugees of special humanitarian concern to the United States." *Id.* § 101. Plaintiffs also direct the Court to the "oversight reporting and consultation requirements" of the INA, which provide that "the President shall provide for periodic discussions" with the relevant congressional committees "regarding changes in the worldwide refugee situation, the progress of refugee admissions, and the possible need for adjustments in the allocation of admissions among refugees." 8 U.S.C. § 1157(d). These provisions, which amount to a broad policy statement and a directive for consultation with Congress on the number of refugees to be admitted on an annual basis, cannot fairly be construed as imposing "a specific, *unequivocal* command, over which an official has no discretion," on the State Department or USCIS to fully adjudicate all refugee applications. *Lovo*, 107 F.4th at 211.

Even if a statute does not mandate action, a regulation can impose a nondiscretionary duty on the agency. *Id.* at 212. The regulations identified by Plaintiffs, however, fail to impose such a duty to adjudicate refugee applications. First, Plaintiffs point to mandatory language in general USCIS regulations governing the adjudication of applications for immigration benefits. Specifically, Plaintiffs reference a regulation stating that "USCIS will consider a benefit request received and will record the receipt date as of the actual date of receipt." 8 C.F.R. § 103.2(a)(7)(i). A "benefit request" is "any application, petition, motion, appeal, or other request relating to an immigration or naturalization benefit." *Id.* § 1.2. On its face, however, this regulation requires only consideration of the request and recording of its receipt date and cannot be read to impose a mandatory duty to adjudicate.

Plaintiffs cite a second general regulation which states:

> If the evidence submitted with the benefit request establishes eligibility, USCIS will approve the benefit request, except that in any case in which the applicable

9

> statute or regulation makes the approval of a benefit request a matter entrusted to USCIS discretion, USCIS will approve the benefit request only if the evidence of record establishes both eligibility and that the petitioner or applicant warrants a favorable exercise of discretion.

*Id.* § 103.2(b)(8)(i). Plaintiffs argue that this regulation should be read alongside 8 C.F.R. § 103.2(b)(18), which describes specific circumstances under which USCIS may withhold adjudication, and that because such circumstances did not arise here, the Court should find a mandatory duty to adjudicate. Even if these regulations could be deemed to apply to refugee applications, which are separately and specifically addressed in 8 C.F.R. Part 207, the approval of a refugee application is, under 8 U.S.C. § 1157(c)(1), "a matter entrusted to USCIS discretion" and is thus exempted on the face of the regulation from any requirement set forth in 8 C.F.R. § 103.2(b)(8)(i). Accordingly, these regulations do not establish a mandatory duty to adjudicate refugee applications.

Plaintiffs cite one regulation specifically relating to the INA's refugee provisions, 8 C.F.R. § 207.1(b), which addresses the eligibility requirement that an applicant is not "firmly resettled" in foreign country and states that in "determining whether or not an applicant is firmly resettled in a foreign country, the [USCIS] officer reviewing the matter shall consider the conditions under which other residents of the country live." 8 C.F.R. § 207.1(b). Plaintiffs argue that the requirement that the officer "shall" consider such conditions establishes a nondiscretionary duty to fully adjudicate all refugee applications. This language, however, requires only that upon consideration of the "firmly resettled" issue, a USCIS officer reviewing an application must consider certain factors; it does not provide a "clear indication of a binding commitment" imposed on the agency, or "a specific, *unequivocal* command, over which an official has no discretion," for USCIS to adjudicate all refugee applications, as required to establish a nondiscretionary duty. *See Lovo*, 107 F.4th at 211.

Indeed, in *Lovo*, the Fourth Circuit rejected a similar argument to that presented by Plaintiffs. The *Lovo* court considered whether USCIS has a nondiscretionary duty to adjudicate an application for an "unlawful presence waiver" which would waive the requirement that a noncitizen married to a United States citizen but unlawfully present in the United States must remain outside the United States for 10 years before receiving an immigrant visa as necessary to reenter and receive adjustment of status to lawful permanent residence based on the marriage. *Id.* at 202–03. The plaintiff in that case argued that a regulatory provision stating that "USCIS will adjudicate a provisional unlawful presence waiver application in accordance with this paragraph and [§ 1182(a)(9)(B)(v)]," 8 C.F.R. § 212(e)(8), established such a nondiscretionary duty to adjudicate. *Lovo*, 107 F.4th at 212. The Fourth Circuit rejected that argument in part because the regulations also contain a provision stating that USCIS "may adjudicate applications for a provisional unlawful presence waiver," 8 C.F.R. § 212.7(e)(2)(i), and when the cited regulation is read as part of a "harmonious scheme" with the other regulatory text, it is only fairly read to mean that "*when, in its discretion,* USCIS decides to adjudicate claims, it must do so in accordance with the standards and procedures laid out in the statute and regulations." *Lovo*, 107 F.4th at 212–13. Applying that same logic here, the Court finds that where, as discussed above, the statute grants discretion to the agency on whether to adjudicate refugee applications, the mandatory language in 8 C.F.R. § 207.1(b) should similarly be read as stating that when, in its discretion, USCIS decides to adjudicate a refugee application it must "consider the conditions under which other residents of the country live," 8 C.F.R. § 207.1(b), when assessing the issue of whether the applicant was firmly resettled in a foreign country. *See Lovo*, 107 F.4th at 212–13.

Finally, Plaintiffs' references to sources outside of the statute and regulations as authority establishing a nondiscretionary duty to adjudicate refugee applications are unpersuasive. Plaintiffs

cite to language in the I-590 Manual, which states that "[i]t is the USCIS officer's responsibility to adjudicate the case as presented by the referring entity and as prepared by [the Resettlement Support Center]," and that a "USCIS officer issues a deferral notice when additional information is necessary to complete the adjudication." I-590 Manual, Module 14: Decisions, §§ a, b(iii). They argue that both of these provisions point to a mandatory duty to adjudicate refugee applications. The plain language of these provisions, however, does not state "a specific, unequivocal command" to adjudicate all refuge applications. *Lovo*, 107 F.4th at 211. More importantly, as discussed above, the basis for such a nondiscretionary duty that may underlie an APA claim generally must arise from a statute or regulation. *Id.* at 217 ("[F]ederal courts may not order an agency to act when neither statute nor regulation provides a basis for doing so."). In *Lovo*, the court considered the language of USCIS forms and final rules not as sources of a nondiscretionary duty, but as "contextual evidence" that arguably could be considered in interpreting ambiguous regulations. *Id.* at 214–15. It then found that those non-regulatory sources only "suggest[ed] that USCIS intends or desires to adjudicate" waiver applications but did not alter the court's finding that the relevant statute and regulations granted discretion to USCIS on whether to adjudicate those applications. *Id.* at 215. Likewise, the Court reads the cited provisions of the I-590 Manual to be only contextual evidence arguably relevant to the interpretation of the relevant statute and regulations which does not otherwise supplant the discretion granted by Congress to USCIS in 8 U.S.C. § 1157(c)(1).

Finally, Plaintiffs cite Executive Order ("EO") No. 14,013, "Rebuilding and Enhancing Programs to Resettle Refugees and Planning for the Impact of Climate Change on Migration," issued by President Biden on February 4, 2021, and focus on the language referencing "[t]he long tradition of the United States as a leader in refugee resettlement" and stating that "USRAP and

other humanitarian programs shall be administered in a manner that furthers our values as a Nation and is consistent with our domestic law, international obligations, and the humanitarian purposes expressed by Congress in enacting the Refugee Act of 1980, Public Law 96-212." Exec. Order No. 14,013, 86 Fed. Reg. 8839 (Feb. 4, 2021). Plaintiffs also argue that a nondiscretionary duty flows from the Executive Order's statements that "[d]elays in administering USRAP . . . are counter to our national interests, can raise grave humanitarian concerns, and should be minimized," and that applicants for refugee status "must be treated with dignity and respect" and "should be afforded procedural safeguards." *Id.* Even assuming that an executive order may be considered to be a source of an agency's nondiscretionary duty, the statements cited by Plaintiffs, which constitute broad statements of policy that do not mandate any particular action by any particular agency, cannot fairly be read as imposing such a duty to adjudicate refugee applications.

Because neither the INA nor the relevant regulations provide any statement that constitutes "a specific, *unequivocal* command" to adjudicate refuge applications, *Lovo*, 107 F.4th at 211, the APA claims fails because Plaintiffs cannot show that an agency has "failed to take a discrete agency action that it is required to take." *Gonzalez*, 985 F.3d at 366 (quoting *Norton*, 542 U.S. at 64). The Motion will therefore be granted as to the APA claim.

### III.    Mandamus Act

Plaintiffs' claim under the Mandamus Act seeking a court order directing the Government to adjudicate their refugee applications fails for the same reasons. In the absence of a clear, nondiscretionary duty requiring a federal agency to take an action, a court cannot invoke the Mandamus Act as a basis to order the agency to undertake that action. *See* 28 U.S.C. § 1361 (granting federal district courts the authority to compel a federal agency "to perform a duty owed to the plaintiff"); *Lovo*, 107 F.4th at 216 ("Similar to the APA, the Mandamus Act only permits

13

federal courts to exercise jurisdiction if an agency has a clear duty to act."). Because Plaintiffs have not identified a clear, nondiscretionary duty on the part of USCIS or the State Department to adjudicate all refugee applications, the Motion will also be granted as to the Mandamus Act claim. *See id.* at 216–17 (denying a claim under the Mandamus Act on this basis).

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Motion to Dismiss, ECF No. 29, will be GRANTED.

Date:   January 29, 2025

THEODORE D. CHUANG
United States District Judge